Filed 10/7/25  P. v. Carnes CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VINCENT LANCE CARNES,<br><br>    Defendant and Appellant. | B338217<br><br>(Los Angeles County<br>Super. Ct. No. XSCTA027413) |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed.

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Vincent Lance Carnes of nine offenses he committed at age 17: one count of first degree murder, two counts of attempted murder, three counts of second degree robbery, and three counts of attempted second degree robbery. In 1995, the trial court sentenced Carnes to a total prison term of 44 years 8 months to life. In May 2024, the trial court denied Carnes's petition for recall and resentencing under Penal Code section 1170, subdivision (d).[1] The statute provides in relevant part: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(1)(A).)

On appeal from the order denying his petition, Carnes borrows from case law discussing the Eighth Amendment's prohibition against cruel and unusual punishments to argue he is entitled to relief under section 1170, subdivision (d) because he has been sentenced to the functional equivalent of a prison term of life without the possibility of parole (LWOP). Second, Carnes argues that if we interpret section 1170, subdivision (d) to provide relief only to defendants actually sentenced to LWOP, then the statute violates his constitutional right to equal protection. We disagree.

First, the statutory language does not support Carnes's argument; it expressly affords relief only to juvenile offenders sentenced to LWOP. Second, Carnes's equal protection challenge fails because the Legislature could have rationally limited relief

---

[1] Undesignated statutory references are to the Penal Code.

to a class of juvenile offenders who will be incarcerated until they die regardless of whether they have been rehabilitated. Although Carnes contends his age upon serving 44 years 8 months of his sentence exceeds certain averages for inmate life expectancy, he fails to demonstrate the Legislature lacked a rational basis for excluding him from resentencing relief. We thus affirm the order denying Carnes's petition for recall and resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our disposition of this appeal.

In June 1994, a jury convicted Carnes of (a) one count of first degree murder, two counts of attempted murder, and three counts of attempted second degree robbery arising from an incident that occurred on September 14, 1993, and (b) three counts of second degree robbery Carnes perpetrated on September 16, 1993. (See *People v. Carnes* (Sept. 25, 1996, B094031) [nonpub. opn.] at pp. 2–4 (*Carnes*) [discussing the facts underlying Carnes's convictions].)[3] The jury also found true

_____

[2] We derive our Factual and Procedural Background in part from admissions made by the parties in their appellate briefing. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 674 [" 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

[3] We, sua sponte, take judicial notice of our prior opinion affirming the judgment. (Evid. Code, §§ 452, subd. (d), 459.)

3

certain personal firearm use and armed principal allegations. (See *Carnes*, at pp. 2, 4 [referring to these allegations].) Carnes was 17 years old when he committed the offenses in question.

On May 16, 1995, the trial court sentenced Carnes to an aggregate term of 44 years 8 months to life in prison.[4] The court found Carnes was entitled to 910 days of presentence custody credit, consisting of 607 actual days of confinement and 303 local conduct credits. Because Carnes's presentence custody credits amounted to nearly two and a half years of his aggregate prison term, Carnes would be eligible for parole at approximately age 61 (that is, approximately 42 years and 2 months after he was sentenced at age 19) under his original sentence, even without

---

[4] Although the minute order for the May 16, 1995 hearing and the abstract of judgment provide that Carnes was sentenced to "a total determinate term of 14 years, 8 months and a total indeterminate term of 30 years to life, *plus two life terms*" (italics added), the parties do not dispute that the trial court either stayed the two additional life terms or ordered Carnes to serve them concurrently with his indeterminate prison term of 30 years to life.

accounting for other credits potentially accrued during his incarceration.[5]

In 1996, we affirmed the trial court's judgment. (*Carnes*, *supra*, B094031, at pp. 1, 12.)

On December 8, 2023, Carnes filed, in pro. per., a petition for recall and resentencing pursuant to section 1170, subdivision (d), wherein he asserted, inter alia, that he had "performed acts that tend to indicate rehabilitation or the potential for rehabilitation . . . ." The trial court appointed him counsel, and the prosecution filed an opposition. On May 8, 2024, the trial court denied Carnes's petition, reasoning that Carnes had not been sentenced to a prison term that was the functional equivalent of LWOP.[6] Carnes timely appealed.

On September 5, 2025, Carnes was granted parole at a youth offender parole suitability hearing.[7] On

---

[5] At certain points in his opening brief, Carnes concedes that as originally sentenced, he would be eligible for parole at age 61. Yet, Carnes elsewhere asserts in the opening brief, without any supporting analysis, that he would instead be eligible for parole at age 62 or 64.

Additionally, Carnes's probation report indicates that at the time the police apprehended him for the instant crimes, he was on youth authority parole for one or more prior offenses, which parole was set to expire on March 20, 1997. Neither side claims that Carnes's unexpired youth authority parole has any impact on the calculation of Carnes's parole eligibility date for the offenses he committed in this case.

[6] The judicial officer who denied Carnes's petition was not the trial judge who had sentenced him.

[7] On September 8, 2025, this court took judicial notice of a page from the Department of Corrections and Rehabilitation's

September 8, 2025, we requested supplemental briefing from the parties on the following question:  Does the fact that Carnes was granted parole on September 5, 2025 moot this appeal?  The parties thereafter submitted their supplemental briefing.

**APPLICABLE LAW AND STANDARD OF REVIEW**

**A.      Section 1170, Subdivision (d)**

In September 2012, the Legislature enacted Senate Bill No. 9, which added subdivision (d)(2) to section 1170 and became effective on January 1, 2013.  (Stats. 2012, ch. 828, § 1 (2011– 2012 Reg. Sess.) [filed with Sec'y of State on Sept. 30, 2012]; see *People v. Baldwin* (2025) 113 Cal.App.5th 978, 988 (*Baldwin*) [identifying the effective date for the new provision].)  The original version of this provision stated in pertinent part:  "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing."  (Stats. 2012, ch. 828, § 1 [§ 1170, former subd. (d)(2)(A)(i)].)

"Effective January 1, 2022, section 1170, subdivision (d)(2) was renumbered as subdivision (d)(1)."  (*Baldwin, supra,* 113 Cal.App.5th at p. 989, fn. 5, citing Stats. 2021, ch. 731, § 1.3.)  Much like section 1170, former subdivision (d)(2)(A)(i), the current version of the statute provides:  "When a defendant who was under 18 years of age at the time of the commission of the

---

website that showed Carnes was granted parole on September 5, 2025.

6

offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(1)(A).) In turn, subdivision (d)(5) provides in pertinent part, "If the court finds by a preponderance of the evidence that one or more of the statements specified in [subdivisions (d)(2)(A) to (d)(2)(D)] is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (See *id.*, subd. (d)(5).) Of note, subdivision (d)(2)(D) applies when "[t]he defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, . . . using self-study for self-improvement, or showing evidence of remorse." (See *id.* subd. (d)(2)(D).)

**B.    Standard of Review**

Insofar as the facts underlying a constitutional claim are undisputed, we review that purely legal question de novo. (See *People v. McKee* (2012) 207 Cal.App.4th 1325, 1338 ["[T]he instant constitutional question involved mixed questions of law and fact that are predominantly legal, if not purely legal questions, which are subject to de novo review."].) We independently review questions of statutory interpretation. (See *In re Lugo* (2008) 164 Cal.App.4th 1522, 1535.)

Even on de novo review, "the judgment [or order] challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (See

7

*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; see also *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. . . ." ' [Citation.]" . . . " 'It is the appellant who bears the burden of overcoming th[e] presumption [that an appealed judgment or order is correct].' "].)

To overcome the presumption of correctness, an appellant must supply the reviewing court with cogent argument supported by legal analysis and citation to the record. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; *People v. Flint* (2018) 22 Cal.App.5th 983, 1006, fn. 17 [noting that an appellate court may " 'decline to consider any factual assertion unsupported by record citation at the point where it is asserted[,]' " and that " '[a]n appellate court "will not develop the appellants' arguments for them" ' "].)

Additionally, "we review the trial court's ruling, 'not the court's reasoning and, if the [trial court's] ruling was correct on any ground, we affirm.' [Citations.]" (*People v. Camacho* (2022) 14 Cal.5th 77, 123–124.)

## DISCUSSION

Carnes argues that he may petition for relief under section 1170, subdivision (d) because, under our high court's decision in *People v. Contreras* (2018) 4 Cal.5th 349, his aggregate prison term of 44 years 8 months to life is the "functional equivalent of" LWOP. In support of this argument,

Carnes maintains *Contreras* stands for the proposition that "the line for what term of years imposed on a juvenile is the functional equivalent of LWOP is somewhere below 50 years, and may be as low as 40." Carnes further argues if section 1170, subdivision (d) excludes juvenile offenders sentenced to the functional equivalent of LWOP, the statute "violates constitutional equal protection guarantees." (Citing, inter alia, *People v. Heard* (2022) 83 Cal.App.5th 608, 631 (*Heard*).)

As a matter of statutory construction, we hold that section 1170, subdivision (d) does not apply to juvenile offenders sentenced to the functional equivalent of LWOP, although juvenile offenders with such sentences may still challenge their exclusion from relief under this statute as a violation of the constitutional guarantee of equal protection. (Discussion, part C, *post*.) As for Carnes's constitutional claim, we note "[t]he Courts of Appeal are presently split on whether *Contreras*'s Eighth Amendment formulation of functional equivalency applies to equal protection challenges to section 1170[, subdivision ](d) . . . ." (*Baldwin*, *supra*, 113 Cal.App.5th at pp. 984–985 [collecting cases]). We agree with our colleagues in the Fifth District and Division Three of the Second District that "an equal protection [challenge] to section 1170[, subdivision ](d) requires 'an equal protection specific' analysis that is not centered on [the] Eighth Amendment concerns" at issue in *Contreras*. (See *Baldwin*, at pp. 984–985 [Fifth District], citing, inter alia, *People v. Thompson* (2025) 112 Cal.App.5th 1058, 1073 (*Thompson*) [Second District, Division Three]; Discussion, parts D.1–D.2, *post*.)[8] Upon

_____

[8] On September 24, 2025, the Supreme Court granted review in *Thompson* but deferred further action "pending consideration and disposition of a related issue in People v.

9

conducting that equal protection specific analysis, we conclude Carnes has not shown a constitutional violation under the applicable rational basis standard. (Discussion, part D.3, *post*.)[9]

Before reaching these issues, we address whether Carnes's appeal is moot. (Discussion, part A, *post*.) Because we conclude the appeal is not moot, we thereafter summarize the *Contreras*

---

Munoz, S290828." (See *California Courts – Appellate Court Case Information for case no. S292540* <https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=3139010&doc_no=S292540&request_token=NiIwLSEnTkw2W1BdSCJNVEpIQFQ0UDxTKiI%2BUz5TMCAgCg%3D%3D> [as of Oct. 2, 2025], archived at <https://perma.cc/67HR-UFRB>.)

In *People v. Munoz* (June 25, 2025, S290828) 569 P.3d 1140, our Supreme Court granted review to decide the following issue: "Is a juvenile homicide offender sentenced to 50 years to life in prison entitled to recall and resentencing under Penal Code section 1170, subdivision (d)(1) on the ground that the sentence is the functional equivalent of life imprisonment without parole?" (See *California Courts – Appellate Court Case Information for case no. S290828* <https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=3130877&doc_no=S290828&request_token=NiIwLSEnTkw2WzAtSSFdUEpJUFw0UDxTKiJeJzhRMCAgCg%3D%3D> [as of Oct. 2, 2025], archived at <https://perma.cc/WWX9-S8QV>.) The Supreme Court has yet to hear oral argument and issue a final decision in *Munoz.* (See *ibid.*)

[9] We arrive at this conclusion without addressing whether Carnes's eligibility for youth offender parole prior to having served 44 years 8 months in prison undermines his assertion the trial court sentenced him to the functional equivalent of LWOP.

decision, an opinion the parties discuss at length in their briefing. (Discussion, part B, *post*.)

## A. The Decision of a Parole Panel To Grant Carnes Parole Does Not Moot This Appeal

" '[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief.' [Citation.]" (*People v. Armas* (2024) 107 Cal.App.5th 350, 353.) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276.) If " ' "all the questions [on appeal] have become moot by subsequent acts or events[,]" ' " the reviewing court may dismiss the appeal. (See *Armas*, at p. 353.)

Carnes was granted parole at a youth offender parole suitability hearing held on September 5, 2025. (Factual & Procedural Background, *ante*.) Carnes correctly notes in his supplemental brief, however, that the decision to grant him parole is not yet final. Specifically, within 120 days of a parole panel's decision that an inmate is "suitable for parole," the board of parole hearings, sitting en banc, may review the decision and refer the matter for a rehearing. (See § 3041, subds. (b)(2)–(b)(3); see also § 3051, subd. (d) [providing in pertinent part that § 3041's procedures apply to youth offender parole hearings].)[10]

---

[10] The CDCR's website does not clarify whether a parole panel or the board of parole hearings, sitting en banc, granted Carnes parole on September 5, 2025. A parole panel appears to have made the decision, given that the governing statutes indicate the board of parole hearings renders parole decisions en banc only after a parole panel has determined whether an

11

Additionally, the Governor is authorized to "reverse or modify a parole decision of the board" "[d]uring the 30 days following the granting . . . by the board of the parole of an inmate sentenced to an indeterminate prison term based upon a conviction of murder . . . ."  (See § 3041.2, subds. (a)–(b).)

Because the board of parole hearings' and the Governor's respective review periods have not yet expired, the parole panel's decision to grant parole to Carnes does not prevent us from granting him effective appellate relief, thus precluding a finding of mootness.

## B.    *Contreras* Considered an Eighth Amendment Challenge to Lengthy Prison Terms Imposed on Juvenile Offenders

In *Contreras*, two defendants were convicted in a joint trial of kidnapping and sexual offenses they committed at the age of 16.  (*Contreras*, *supra*, 4 Cal.5th at p. 356.)  The trial court sentenced one of the defendants to a prison term of 50 years to life and the other to a term of 58 years to life in prison.  (See *id.* at pp. 356, 368.)  The Court of Appeal affirmed the defendants' convictions but reversed their sentences, reasoning the terms violated the Eighth Amendment's prohibition on cruel and unusual punishment.  (See *id.* at pp. 356, 358, 371, 379.)  On review, our Supreme Court affirmed the Court of Appeal's judgment.  (*Id.* at pp. 358–359, 379, 383.)

---

inmate is suitable for parole.  (See § 3041, subd. (a)(3) [providing for en banc review of a tie vote of the parole panel]; *id.*, subd. (b)(2)–(b)(3) [authorizing en banc review of "any decision of the parole panel finding an inmate suitable for parole"].)

In determining whether the defendants' lengthy prison terms "violate[d] the Eighth Amendment under the standards articulated in *Graham[ v. Florida* (2010) 560 U.S. 48]," the *Contreras* court observed:  "Under *Graham*, juvenile nonhomicide offenders must be given 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' [Citations.]"  (See *Contreras*, *supra*, 4 Cal.5th at pp. 364, 379, quoting *Graham*, at p. 75.)  *Contreras* acknowledged that *Graham* "did not define the maximum length of incarceration before parole eligibility that would be permissible . . . ."  (*Contreras*, at p. 367.)  *Contreras* concluded that *Graham* "made clear the nature of its concerns:  A lawful sentence must recognize 'a juvenile nonhomicide offender's capacity for change and limited moral culpability[ ]' [citation,] . . . offer 'hope of restoration' [citation], 'a chance to demonstrate maturity and reform' [citation], a 'chance for fulfillment outside prison walls,' . . . a 'chance for reconciliation with society' [citation,] . . . 'the opportunity to achieve maturity of judgment and self-recognition of human worth and potential[ ]' [citation,] . . . [and] an 'incentive to become a responsible individual.'  [Citation.]"  (See *Contreras*, at p. 367, quoting *Graham*, at pp. 70, 74, 79.)

*Contreras* held that the defendants' sentences were "functionally equivalent" to LWOP because their lengthy terms did not provide the opportunities *Graham* requires.  (See *Contreras*, *supra*, 4 Cal.5th at pp. 367–369.)  In particular, the *Contreras* court remarked, "[T]he language of *Graham* suggests that the high court envisioned more than the mere act of release or a de minimis quantum of time outside of prison."  (*Id.* at p. 368.)  *Contreras* further observed, "Confinement with no

13

possibility of release until age 66 or age 74 seems unlikely to allow for the reintegration that *Graham* contemplates." (*Ibid*.)

In addition, the *Contreras* court explained that in reviewing a federal habeas corpus petition, the United States Supreme Court "recognized there is a reasonable argument that . . . incarcerating a juvenile nonhomicide offender for 40 years or more without parole eligibility is simply too long under *Graham*." (See *Contreras*, *supra*, 4 Cal.5th at pp. 377–378, citing *Virginia v. LeBlanc* (2017) 582 U.S. 91, 94–95.) *Contreras* noted that *LeBlanc* arguably supported the defendants' contention the potential availability of "elderly parole . . . after 44 years in prison" did not defeat their Eighth Amendment challenges to their prison sentences. (See *Contreras*, at pp. 373–374, 377–378.) Our Supreme Court, however, "decline[d] to resolve . . . whether the availability of an elderly parole hearing at age 60 for a juvenile nonhomicide offender satisfies the Eighth Amendment concerns set forth in *Graham*," and instead left that issue "for the lower courts to address in the first instance." (See *id*. at pp. 374, 378.)

## C. By Its Terms, Section 1170, Subdivision (d) Does Not Apply to Carnes's Prison Sentence of 44 Years 8 Months to Life

Carnes contends that although "*Contreras* . . . is an Eighth Amendment case," its "holding controls here" "because the Eighth Amendment concerns in *Contreras* and the Legislature's objectives behind enacting section 1170, subdivision (d)(1) are inextricably linked." Citing certain aspects of section 1170, subdivision (d)'s legislative history, Carnes maintains, "Both the Eighth Amendment challenge in *Contreras* and section 1170, subdivision (d)(1) address concerns about a juvenile offender's

14

ability to have a meaningful opportunity for release as discussed in *Graham v. Florida* (2010) 560 U.S. 48." Carnes thus argues, "[I]t makes no sense to reject the High Court['s] insights on juvenile offender de facto LWOP from the *Contreras* case when evaluating whether somebody should get the benefit of a law specifically enacted to broadly remediate harm to juveniles . . . ."

Although Carnes's contention is not entirely clear, he seems to be arguing we should construe section 1170, subdivision (d) as authorizing petitions for recall and resentencing by defendants who were sentenced to the functional equivalent of LWOP for purposes of *Contreras*. Indeed, in the standard of review section of his opening brief, Carnes states this appeal concerns the proper "interpretation and application of the statute."

By its express terms, section 1170, subdivision (d)(1)(A) applies to "a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole . . . ." Thus, the statutory text is not reasonably susceptible to Carnes's expansive interpretation.[11] For that reason, we reject his interpretation without addressing the statute's legislative history. (See *People v. Watie* (2002)

---

[11] (See *Dignity Health v. Local Initiative Health Care Authority of Los Angeles County* (2020) 44 Cal.App.5th 144, 154 [holding that a statutory term " 'must be given a reasonable and commonsense interpretation' "]; see also *People v. Ortega* (2025) 111 Cal.App.5th 1252, 1263 [holding that the plain language of § 1170, subd. (d)(1)(A) " 'limits eligibility . . . to juvenile offenders sentenced to an explicitly designated life without parole term' "], review granted Sept. 17, 2025, S292070.)

100 Cal.App.4th 866, 884 [" 'When the words [of a statute] are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history.' "].)[12]

Further, Carnes seems to argue that the Legislature's failure to make certain amendments to section 1170, subdivision (d) after Division One of the Fourth District decided *Heard* in 2022 supports his interpretation of the statute.

In *Heard*, the defendant was sentenced to an aggregate prison term of 103 years to life upon being convicted of two counts of attempted murder committed at age 15 and one count of voluntary manslaughter committed at 16. (See *Heard*, *supra*, 83 Cal.App.5th at pp. 612, 629.) The trial court denied the defendant's petition for relief under section 1170, subdivision (d) on the ground "he was not sentenced to an explicitly designated term of life without the possibility of parole." (*Heard*, at p. 612.) On appeal, the reviewing court rejected the defendant's assertion that subdivision (d) of section 1170 "should be interpreted to apply . . . to a juvenile offender . . . who has been sentenced to multiple terms that are the functional equivalent of life without parole," reasoning the statute "limits eligibility . . . to juvenile offenders sentenced to an explicitly designated life without parole term." (See *Heard*, at pp. 612, 622, 626.)

Next, the appellate court ruled the statute's exclusion of the defendant from eligibility for resentencing relief violated his constitutional right to equal protection of the laws. (See *Heard*, *supra*, 83 Cal.App.5th at pp. 612, 622.) *Heard* reasoned the

---

[12] We discuss section 1170, subdivision (d)'s legislative history in assessing Carnes's equal protection claim. (Discussion, part D.3, *post*.)

16

defendant had received a "de facto" LWOP sentence, and the reviewing court was "unable to identify a rational basis for making juveniles sentenced to an explicitly designated life without parole term, but not juveniles sentenced to the functional equivalent of life without parole, eligible to petition for resentencing under section 1170, subdivision (d)(1)." (See *Heard*, at pp. 629, 633.) To remedy this constitutional violation, the *Heard* court reversed the denial order and instructed the trial court on remand to reconsider the defendant's petition. (See *id.* at p. 634.)[13]

Carnes argues, "Since *Heard* was decided in 2022, the Legislature has continued to amend section 1170 but has not prohibited juvenile offenders with de facto LWOP from relief under the statute." Carnes thus appears to be contending (1) *Heard* interpreted section 1170, subdivision (d) to afford relief to juvenile offenders with sentences functionally equivalent to LWOP, and (2) the Legislature tacitly agreed with *Heard*'s interpretation by failing to amend the statute to prohibit such juvenile offenders from petitioning for relief.

Admittedly, "[i]f the Legislature amends or reenacts the statute without changing the interpretation placed on that statute by the courts, ' "the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute. [Citations.]" ' [Citation.]" (*People v. Brown* (2016) 247 Cal.App.4th 1430, 1436.) Yet, *Heard* found "section 1170, subdivision (d)(1)(A)[ ] cannot plausibly be interpreted to apply to juvenile offenders who were not sentenced to an explicitly

---

[13] In our Discussion, part D.3, *post*, we explain why *Heard*'s equal protection holding does not apply here.

17

designated life without parole term."  (See *Heard*, *supra*, 83 Cal.App.5th at p. 634, fn. 17.)  The Legislature cannot be deemed to have acquiesced in an interpretation of the statute that *Heard* never adopted.

Similarly, Carnes claims the following passage from *People v. Bagsby* (2024) 106 Cal.App.5th 1040 establishes that in amending section 1170 after *Heard*, the Legislature expressed its intent to allow defendants with sentences functionally equivalent to LWOP to seek resentencing:  "[W]e have additional evidence of legislative intent in the Legislature's response to *Heard*.  Since 2022, when *Heard* was decided, the Legislature has continued to amend section 1170.  [Citations.]  Had the Legislature preferred for the equal protection violation we identified in *Heard* to be remedied by striking subdivision (d)(1)(A) from section 1170, it could have accomplished that result itself.  Instead, it has left the provision intact.  We take this as further evidence it does not prefer for the provision to be stricken."  (*Bagsby*, *supra*, 106 Cal.App.5th at p. 1063.)  Carnes takes these observations out of the context in which *Bagsby* made them.

*Bagsby* made these remarks to address the Attorney General's argument that the proper remedy for the equal protection violation identified in *Heard* was to strike section 1170, subdivision (d)(1)(A) and deny all juvenile offenders resentencing relief under the statute, instead of affording sentencing relief to juvenile offenders sentenced to a prison term functionally equivalent to LWOP.  (See *Bagsby*, *supra*, 106 Cal.App.5th at pp. 1054, 1062–1063.)  *Bagsby* rejected that argument, reasoning if the Legislature had preferred to deny resentencing relief to all juvenile offenders, it would have repealed the statute.  (See *id*. at pp. 1062–1063.)  The *Bagsby*

18

court did not find the Legislature intended the statute to apply to juvenile offenders sentenced to the functional equivalent of LWOP. (See *ibid*.)

In sum, because the trial court sentenced Carnes to a prison term of 44 years 8 months to life instead of LWOP, section 1170, subdivision (d) does not authorize Carnes to petition for recall and resentencing.

**D.**     **Carnes Fails To Show That Section 1170, Subdivision (d) Violates His Right to Equal Protection Because the Legislature Could Rationally Provide Relief Only to Juvenile Offenders Certain To Face Imprisonment for the Rest of Their Lives**

We reject Carnes's argument that in analyzing his equal protection claim, we should employ *Contreras*'s standard for determining whether a term of imprisonment is functionally equivalent to an LWOP sentence. (Discussion, part D.1, *post*.) Further, rational basis review governs Carnes's equal protection claim. (Discussion, part D.2, *post*.) Carnes has failed to establish a constitutional violation under that deferential standard. (Discussion, part D.3, *post*.)

> **1.**     ***Contreras*'s *standard for determining whether a prison sentence is the functional equivalent of LWOP does not apply to equal protection claims***

We acknowledge the *Contreras* court made passing references to equal protection in its decision. Specifically, in rejecting the Attorney General's argument that the high court should determine whether a prison sentence is the functional equivalent of LWOP using life expectancy data, *Contreras* observed this "actuarial approach gives rise to a tangle of legal

and empirical difficulties," including whether accounting for differences in race and gender to ascertain life expectancy "would pass constitutional muster." (See *Contreras*, *supra*, 4 Cal.5th at pp. 360–362.) *Contreras* also noted, but "decline[d] to resolve," the defendants' argument that the youth offender parole statute's exclusion of so-called "One Strike offenders" from parole eligibility "violates principles of equal protection . . . ." (See *id.* at p. 382.)[14]

 *Contreras*, however, did not hold that a prison sentence of 50 years to life is the functional equivalent of LWOP for the purposes of the constitutional guarantee of equal protection. Indeed, the *Contreras* court framed the issue on appeal as follows: Whether the "term-of-years sentence[s before it] function like LWOP *with respect to the Eighth Amendment concerns that constrain lawful punishment for juvenile nonhomicide offenders . . . .*" (See *Contreras*, *supra*, 4 Cal.5th at p. 364.) We agree with our colleagues in the Fifth District and in Division Three of this District that this language from *Contreras* "specifically tether[s] the functional equivalence question before *Contreras* to the Eighth Amendment . . . ." (See *Baldwin*, *supra*, 113 Cal.App.5th at p. 996, citing *Thompson*, *supra*, 112 Cal.App.5th at p. 1072.)

---

 [14] "Section 667.61, often called the 'One Strike' law, was enacted to ensure that serious sexual offenders receive long prison sentences regardless [of] whether they have any prior criminal convictions." (*People v. Luna* (2012) 209 Cal.App.4th 460, 465.) The Supreme Court later rejected a One Strike offender's equal protection challenge to the youth offender parole statute. (See *People v. Williams* (2024) 17 Cal.5th 99, 110, 137 (*Williams*).)

This conclusion is reinforced by our colleagues' observation that the high court made "statements in *[People v.] Hardin* [(2024) 15 Cal.5th 834] and *Williams* 'rejecting attempts to collapse the separate Eighth and Fourteenth Amendment analyses into one.' [Citation.]" (*Baldwin, supra*, 113 Cal.App.5th at p. 996, quoting *Thompson, supra*, 112 Cal.App.5th at p. 1073.)

Specifically, in the course of rejecting an equal protection challenge to the youth offender parole statute leveled by a defendant sentenced to LWOP for committing a special circumstance murder at age 25, *Hardin* stated, "[The defendant] notes that we have described an aggregate sentence that fixes parole eligibility outside of an offender's life expectancy as the 'functional equivalent of a life without parole sentence.' [Citation.] But we have employed that description in the context of identifying the category of juvenile offenders to whom the Eighth Amendment limitations on life without parole sentences apply; for that purpose, what matters is only whether the sentence, by its nature, forecloses any realistic chance for a juvenile offender to rejoin society. [Citation.] We have not held that a lengthy term-of-years sentence is necessarily equivalent to a life without parole sentence for all purposes." (See *Hardin, supra*, 15 Cal.5th at pp. 838–839, 863, citing, inter alia, *Contreras, supra*, 4 Cal.5th at p. 368.)

In *Williams*, the high court rejected a One Strike offender's equal protection challenge to the youth offender parole statute. (Fn. 14, *ante*.) The defendant had argued, inter alia, "[I]t is irrational to exclude One Strike offenders but not those convicted of murder from early parole consideration because the high court deemed murder not only fundamentally different 'in a moral sense' from other serious offenses, but also incomparable in terms

21

of its ' " 'severity and irrevocability.' " ' [Citation.]" (*Williams*, *supra*, 17 Cal.5th at pp. 130–131, quoting *Graham*, *supra*, 560 U.S. at p. 69.) The *Williams* court responded, "This argument based on the comparative seriousness of crimes, however, is premised on concerns relevant in the context of Eighth Amendment challenges to the death penalty and other severe criminal penalties, such as juvenile LWOP; such concerns do not necessarily establish whether a Legislature's classification violates equal protection under a rational basis standard. . . . [T]his equal protection analysis of [the youth offender parole statute] should not be conflated with principles governing the Eighth Amendment's prohibition against cruel and unusual punishment and its focus on punishment and proportionality in capital and juvenile LWOP sentencing." (See *id.* at p. 131.)

In sum, *Contreras*, *Hardin,* and *Williams* establish that *Contreras*'s discussion of functional equivalence is limited to the Eighth Amendment context. We acknowledge that we are parting ways with our colleagues in Division Five in *People v. Cabrera* (2025) 111 Cal.App.5th 650. There, Division Five accepted the Attorney General's concession that because *Contreras* " 'held that a 50-year-to-life sentence is the functional equivalent of an LWOP term . . . , [the defendant in *Cabrera*], who received the same sentence, should be entitled to seek resentencing relief under section 1170, subdivision (d)(1).' " (See *Cabrera, supra,* 111 Cal.App.5th at p. 653, citing *Contreras, supra,* 4 Cal.5th at p. 369.) The *Cabrera* court did not explain why *Contreras* governs a defendant's eligibility for relief under section 1170, subdivision (d). (See *Cabrera*, at pp. 653–654.) Also, in contrast to *Cabrera*, the Attorney General does not

22

concede here that *Contreras* applies to Carnes's equal protection claim. Accordingly, *Cabrera* is not instructive.

### 2. *Carnes's equal protection challenge is subject to rational basis review*

"The equal protection clause of the Fourteenth Amendment to the United States Constitution provides that no state may 'deny to any person within its jurisdiction the equal protection of the laws.' . . . [Citation.]" (*Hardin, supra,* 15 Cal.5th at p. 847, citing U.S. Const., 14th Amend, fn. omitted.)[15] " '[T]he requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' [Citation.]" (*Williams, supra,* 17 Cal.5th at p. 122.)

"The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue. Courts apply heightened scrutiny when a challenged statute or other regulation involves a suspect classification such as race, or a fundamental right such as the right to vote, and accordingly

---

[15] Although "[t]he California Constitution also guarantees equal protection of the law" (*Hardin, supra,* 15 Cal.5th at p. 847, fn. 2, citing Cal. Const., art. I, § 7, subd. (a)), Carnes does not make any arguments specific to the equal protection clause of our state constitution. In light of Carnes's failure to raise any equal protection argument under our state constitution, "we see ' "no reason to suppose" that federal equal protection analysis would yield a result different from what would emerge from analysis of the state Constitution.' [Citation.]" (See *Hardin,* at p. 847, fn. 2; *ibid.* [proceeding under the assumption that the federal and state equal protection provisions would yield the same result after the defendant failed to raise any arguments specific to the state Constitution].)

23

will demand greater justification for the differential treatment. [Citations.] But when a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' [Citations.] A court applying this [rational basis] standard finds 'a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose.' [Citation.]" (See *Hardin*, *supra*, 15 Cal.5th at pp. 847–848; *ibid.* [referring to the latter test as "rational basis review"].) Carnes concedes in his opening brief that the rational basis standard governs his equal protection claim.

"Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.] Evaluating potential justifications for disparate treatment, a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.] . . . '[T]he logic behind a potential justification need [not] be persuasive or sensible—rather than simply rational.' [Citation.]" (*Hardin*, *supra*, 15 Cal.5th at p. 852.)

Our high court has "cautioned[, however,] that ' "the realities of the subject matter cannot be completely ignored." ' [Citations.] The statutory classification must be rationally related to ' "realistically conceivable legislative purpose[s]," ' and

may not be based on 'invented fictitious purposes that could not have been within the contemplation of the Legislature.' [Citations.]" (*Williams*, *supra*, 17 Cal.5th at p. 125.) In undertaking rational basis review of a statute, we may "focus[ ] on the apparent motivations underlying the challenged classification, as revealed in the statutory text and history . . . ." (See *Hardin*, *supra*, 15 Cal.5th at p. 852, fn. 3.)

As for whether the statutory classification is rationally related to a realistically conceivable legislative purpose, " ' "we must accept any gross generalizations and rough accommodations that the Legislature seems to have made." [Citation.] "A classification is not arbitrary or irrational simply because there is an ' "imperfect fit between means and ends" ' [citations], or "because it may be 'to some extent both underinclusive and overinclusive.' " ' [Citation.] 'Nothing compels the state "to choose between attacking every aspect of a problem or not attacking the problem at all[.]" ' [Citation.] Far from having to "solve all related ills at once" [citation], the Legislature has "broad discretion" to proceed in an incremental and uneven manner without necessarily engaging in arbitrary and unlawful discrimination.' [Citation.]" (*Williams*, *supra*, 17 Cal.5th at pp. 124–125.)

### 3. *Carnes does not demonstrate that section 1170, subdivision (d)(1)(A)'s eligibility limitation lacks a rational basis*

Our colleagues in the Fifth District and Division Three of this District conducted a detailed analysis of section 1170, subdivision (d)'s legislative history, including committee reports concerning the legislation that added the recall and resentencing provisions, i.e., Senate Bill No. 9. (See *Baldwin*, *supra*,

113 Cal.App.5th at pp. 988–989, 997, 1002–1005, citing, inter alia, *Thompson, supra,* 112 Cal.App.5th at pp. 1075–1077.) We agree with our colleagues that "although Senate Bill [No.] 9's legislative history indicates *Graham* violations and cruel or disproportionate sentences imposed on juveniles were among the Legislature's general considerations in enacting section 1170[, subdivision ](d), 'it was expressly concerned about juveniles being sentenced to *die* in prison.' [Citation.]" (*Baldwin*, at p. 997, quoting *Thompson*, at p. 1075; see also *Baldwin*, at p. 1005 [noting that Sen. Bill No. 9 was "described by supporters as a ' "modest and narrowly focused piece of legislation" ' given the limited number of inmates the bill was anticipated to affect"].)

The next question is whether the challenged classification—the statutory text authorizing only defendants sentenced to "imprisonment for life without the possibility of parole" to petition for relief (see § 1170, subd. (d)(1)(A)), " 'bears a rational relationship to [the] legitimate state purpose' " at issue (see *Hardin, supra,* 15 Cal.5th at p. 848), that is, " 'provid[ing] an opportunity for [resentencing to] juvenile offenders whose sentences ensured they would die in prison' " (see *Baldwin, supra,* 113 Cal.App.5th at p. 1004, quoting *Thompson, supra,* 112 Cal.App.5th at p. 1076). We conclude that as a general matter, the statutory restriction on eligibility is rationally related to this legislative purpose.

As our colleagues in the Fifth District persuasively explained, "The Legislature could rationally determine that 'providing the relatively small number of juvenile offenders otherwise certain to die in prison an opportunity to obtain a lesser sentence was the most pressing priority.' [Citation.] While this excludes juveniles with lengthy term-of-years sentences that

26

do not guarantee their death in prison, the Legislature is 'entitled to proceed incrementally, so long as it proceeds rationally, in "walking [the] tightrope" of the political process.' [Citation.] ' "Nothing compels the state 'to choose between attacking every aspect of a problem or not attacking the problem at all[.]' [Citation.] Far from having to 'solve all related ills at once' [citation], the Legislature has 'broad discretion' to proceed in an incremental and uneven manner without necessarily engaging in arbitrary and unlawful discrimination." ' [Citation.]" (*Baldwin*, 113 Cal.App.5th at p. 1005, quoting *Thompson*, *supra*, 112 Cal.App.5th at p. 1077, *Hardin*, *supra*, 15 Cal.5th at p. 866, & *Williams*, *supra*, 17 Cal.5th at p. 125.)

We acknowledge Carnes could, and apparently does, make an as applied equal protection challenge to section 1170, subdivision (d). (See *Williams*, *supra*, 17 Cal.5th at pp. 120–121 [discussing the differences between facial and as applied constitutional claims].) As our high court observed in *Williams*, a litigant can prevail on a facial challenge to a statute only if he or she shows the legislation is unconstitutional " 'in "at least ' "the generality" ' [citation] or 'vast majority' " of cases[.]' " (See *id.* at p. 121.) Such a claim focuses on the text of the statute, and not on its specific application to an individual or class of persons. (See *id.* at pp. 120–121.) Because the Legislature could legitimately have as its objective providing resentencing relief to rehabilitated juvenile offenders certain to die in prison, limiting relief to juvenile offenders sentenced to LWOP is rationally related to that objective. Accordingly, as we explained earlier in this section, the statute is facially constitutional.

In contrast, an as applied challenge "seeks 'relief from a specific application of a facially valid statute or ordinance to an

27

individual or class of individuals . . . .' [Citation.]" (See *Williams*, *supra*, 17 Cal.5th at p. 120, italics omitted.) By claiming the statute violates his equal protection rights because he has the functional equivalent of an LWOP sentence, Carnes appears to be asserting the statute is unconstitutional as applied to him. To prevail on such a challenge, Carnes must demonstrate there is no rational relationship between (1) the Legislature's objective of providing resentencing relief to rehabilitated juvenile offenders certain to die in prison; and (2) Carnes's statutory ineligibility for resentencing relief. (See Discussion, part D.2, *ante* [describing the rational basis standard].)

Carnes argues certain data, including "data collected by the California Correctional Health Care System," show that an inmate's average life expectancy ranges from ages 50.5 to 65. He uses this data to argue he is *likely*—but not certain—to die in prison. He thus is not like the youthful offender with an LWOP sentence, who is certain to die in prison and who was the subject of the Legislature's concern in enacting section 1170, subdivision (d) in the first place.[16] As we have explained above, the Legislature does not violate the equal protection guarantee by proceeding "incremental[ly]." (See *Williams*, *supra*, 17 Cal.5th at p. 124; see also *Baldwin*, *supra*, 113 Cal.App.5th at p. 1005

---

[16] (See Factual & Procedural Background, *ante* [noting Carnes will be age 61 upon serving 44 years 8 months of his sentence]; *Contreras*, *supra*, 4 Cal.5th at p. 364 [observing that "[i]n a normal distribution, about half of a population reaches or exceeds its life expectancy, while the other half does not," thereby suggesting that a release date exceeding an inmate's life expectancy does not necessarily condemn him or her to death in prison].)

[same].) Because Carnes does not demonstrate the Legislature lacked a rational basis for excluding him from the class of inmates who may petition for relief under section 1170, subdivision (d), his as applied challenge necessarily fails. (See *Hardin*, *supra*, 15 Cal.5th at p. 852 [noting that the party challenging a statutory classification bears the burden of showing it lacks a rational basis].)

Lastly, we note Carnes argues that *Heard*, *People v. Sorto* (2024) 104 Cal.App.5th 435, and *Bagsby* support his equal protection challenge to section 1170, subdivision (d). As *Baldwin* explained, those decisions are inapposite because they concerned "sentence[s] that guarantee[] death in prison . . . ." (See *Baldwin, supra*, 113 Cal.App.5th at p. 1004.) *Heard* involved a prison "sentence[] of 103 years to life," the defendant in *Sorto* was sentenced to "140 years to life" in prison, and the offender in *Bagsby* suffered a prison term of "107 years to life." (See *Baldwin*, at p. 1004, citing *Heard, supra*, 83 Cal.App.5th at p. 629, *Sorto, supra*, 104 Cal.App.5th at pp. 439–440, & *Bagsby, supra*, 106 Cal.App.5th at pp. 1046–1047.) Assuming arguendo the Legislature could not rationally exclude from resentencing relief defendants sentenced to such lengthy prison terms that are clearly beyond their natural life expectancies, the same cannot be said for Carnes, who was sentenced to a term of imprisonment of 44 years 8 months to life. (Cf. *Baldwin*, at pp. 985, 1006 [rejecting an equal protection claim to § 1170, subd. (d) raised by a "juvenile nonhomicide offender[] sentenced to 44 years to life" in prison].)

In sum, Carnes fails to show that section 1170, subdivision (d)(1)(A)'s eligibility limitation violates his constitutional right to equal protection.

## DISPOSITION

We affirm the trial court's May 8, 2024 order denying defendant Vincent Lance Carnes's petition for recall and resentencing under Penal Code section 1170, subdivision (d).

NOT TO BE PUBLISHED.


BENDIX, Acting P. J.


We concur:



WEINGART, J.



M. KIM, J.